IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   WILLIAM VINCENT KANTOLA,
7.   JIMMIE LEE LITTLE,
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

    Defendants.

## DEFENDANT ROGER AUSTIN'S RULE 29 MOTION FOR ACQUITTAL

Pursuant to Federal Rule of Criminal Procedure 29(a), Defendant Roger Austin moves for a judgment of acquittal because the evidence that the Department of Justice ("DOJ") has presented is insufficient to sustain a conviction.

### I.    Legal Standard

The DOJ has charged Mr. Austin with a single count of conspiring to violate the Sherman Act, alleging that he "entered into and engaged in a continuing combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States." Dkt. 101 ¶ 1. To support a conviction, DOJ must prove beyond a reasonable doubt that during the charged period: (1) two

1

or more persons illegally agreed to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken; (2) that Mr. Austin knowingly became a member of the charged conspiracy, knowing its object; (3) that the agreement would unreasonably restrain trade; and (4) that the conspiracy occurred in interstate commerce. Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 16. "[T]here must be direct or circumstantial evidence that [Mr. Austin] had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984).

"After the government closes its evidence . . . the court on the defendant's motion must enter a judgment of acquittal on any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29 ("Rule 29"). In considering a Rule 29 motion, courts view the evidence "in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime." *United States v. Fuller*, 751 F.3d 1150, 1153 (10th Cir. 2014) (quotations omitted). A Rule 29 motion must be granted "if the evidence that [the] defendant committed the crime is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* (quotations omitted). While the government may satisfy its burden through circumstantial evidence, the Tenth Circuit has "repeatedly iterated that a conviction cannot be sustained if obtained by piling inference on inference." *United States v. Summers*, 414 F.3d 1287, 1293 (10th Cir. 2005) (quotation omitted).

      II.      **DOJ Has Failed to Prove that Mr. Austin Knowingly Entered into an Agreement, Knowing Its Object, to Fix Prices or Rig Bids**[1]

      A.      **DOJ Failed to Prove the Existence of an Agreement**

DOJ presented nine fact witnesses and introduced more than 500 exhibits. Not a single fact witness testified to the existence of a specific agreement to fix prices or rig bids entered into by Mr. Austin. In fact, most of DOJ's fact witnesses specifically disclaimed personal knowledge of any such agreement. *See, e.g.,* Robert Lewis, Nov. 4, 2021 (TR. 131:18-132:01) (disclaiming knowledge of any defendant's participation in the alleged conspiracy); Mike Ledford, Nov. 10, 2021 (TR. 37:08-38:05) (same); Sara Fisher, Nov. 5, 2021 (TR. 24:05-13) (same).[2]

DOJ's "cooperating" witness, Robbie Bryant, is not an exception. Even crediting his testimony, the only agreement he claimed to witness was between Scott Tucker and an unidentified employee at MarJac to fix the price of boneless breast meat sold to US Foods. Robert Bryant, Nov. 1, 2021 (TR. 140:10-142:05; 144:01-147:04; 150:15-151:24).[3] That testimony does not implicate Mr. Austin or any of the other nine defendants. Nor does it involve any of the products which the prosecution alleges were the subject of the agreement it has charged. While Mr. Bryant did make conclusory statements that he believed an agreement existed with respect to KFC, he claimed no personal knowledge, nor did he testify about any

---

[1] Pursuant to D.C. Colo. L.Cr.R. 12.1(b) Mr. Austin adopts and incorporates by refence the arguments advanced and authorities cited in Sections IV.D and V of Mr. Kantola's Motion for a Judgment of Acquittal with the respect to the DOJ's failure to prove undue restraint of trade and the absence of a basis to apply a *per se* presumption and improper variance from the indictment, respectively.

[2] Where an official trial transcript for a witness is not yet available references to the transcript rely on the Live Note version. In accordance with the Court's instructions, testimony from the unofficial transcript is referenced but not directly quoted.

[3] Citations to Mr. Bryant's testimony are to the official transcript.

3

specific facts to support his claim that an agreement existed. Bryant, Nov. 2, 2021 (TR. 218:06-219:07; 31:18-32:16).

That leaves DOJ's circumstantial evidence, such as it is. This evidence, even when viewed in the light most favorable to DOJ shows, at most, Mr. Austin performing standard-practice market-intelligence gathering that was considered by decision makers at Pilgrim's when making independent decisions. Gathering market intelligence, even from competitors, is not a violation of the Sherman Act without additional evidence of an agreement. *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) ("Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was part of, the information exchange."). Here, the record evidence simply does not support a reasonable inference of an illegal agreement as charged, much less one that Mr. Austin knowingly entered. To the contrary, there is no evidence that Mr. Austin knowingly entered into a conspiracy, the evidence shows that he was an advocate for lower prices for his customer, and even Mr. Bryant acknowledged that Mr. Austin would "have tough conversations internally" to advocate for KFC. *See* Bryant, Nov. 2, 2021 (TR. 301:05-13).

The only way to get from DOJ's evidence to a guilty verdict is to layer inference upon inference about the content and purpose of certain communications, like Yertle stacking turtles. *See* Dr. Seuss, *Yertle the Turtle and Other Stories* (1950) ("I'll call some more turtles. I'll stack'em to heaven! I need 'bout five thousand, six hundred and seven!")). A conviction on that basis cannot be sustained. *See Summers*, 414 F.3d at 1293.

4

### B.  The Evidence Proves the Absence of an Agreement

While the burden is on DOJ to prove each element of the alleged violation beyond a reasonable doubt, a reasonable jury looking at the evidence would conclude that DOJ's evidence has, in fact, affirmatively demonstrated the absence of a conspiracy.

The specific allegations against Mr. Austin relate to certain broiler chicken products sold to KFC from 2012–2018. But DOJ's evidence shows that there was not a conspiracy to rig the prices of those products. Rather, the evidence, specifically the actual bids and contracts at issue, shows that the suppliers had different bidding strategies, resulting in different price decisions and different awarded volume.

First, the evidence presented shows the suppliers' prices were all different.

|  | 2012 | 2013 | 2014 | 2015 | 2016 | 2017* | 2018 |
|---|---|---|---|---|---|---|---|
| **Pilgrim's** | 0.9678 | 0.9703 | 0.9250 | 1.0856 | 1.0856 | 0.9998 | 0.9621 |
| **Claxton** | 0.9618 | 0.9625 | 0.9275 | 1.0669 | 1.0369 | 0.9809 | 0.9371 |
| **George's** | 0.9686 | 0.9662 | 0.9215 | 1.0307 | ** | 0.9537 | 0.9455 |
| **Koch** | 0.9397 | 0.9622 | 0.9219 | 1.0369 | 1.0369 | 0.9988 | 0.9487 |
| **Tyson** | 0.9723 | 0.9681 | 0.9299 | 1.0762 | 1.0762 | ** | 0.9486 |
| **Case** | No bid | 0.9618 | 0.9202 | 1.0310 | ** | 0.9757 | 0.9531 |
| **MarJac** | 0.9687 | 0.9675 | 0.9254 | 1.0775 | 1.0775 | .9650 | 0.9410 |
| **Marshall Durbin** | 0.9625 | 0.9683 | 0.9204 | Acquired by MarJac | | | |

\*Some but not all suppliers offered a mid-year price decrease.
\*\* Prices not in evidence are not included in the chart.

*See* Ledford, Nov. 10, 2021 (TR. 51:16-70:20, 75:06-81:16, 102:13-103:23).[4]  GX 10-4 and underlying GXs. 1119, 1121, 1123, 1125, 1126 and 1127; Fisher, Nov. 4, 2012 (TR. 221:24-222:05); DXs. F-744F-756, F-783, F-789, F-796, F-747, B-963, G-474, C-207.

---

[4] The contracts admitted into evidence and the subject of Mr. Ledford's testimony are Exhibits F-

5

Second, in contrast to DOJ's allegation that this was a conspiracy to agree to raise prices, Pilgrim's prices to KFC declined during the relevant period – 2014, 2017 and 2018 – more often than they rose – 2013 and 2015.  *See* Chart above and GX. 1729, F-796.  And the price increase in 2015 has been thoroughly explained by virtually every witness as the result of market conditions.  *See, e.g.,* James Olsen, Oct. 27, 2021 (TR. 116:17-117:06, 117:20-118:04); Robert Lewis, Nov. 3, 2021 (TR. 80:05-18). Moreover, during that year the range of prices among competing suppliers widened substantially, once again demonstrating the absence of any agreement. These price differences and movements demonstrate independent decision-making, not a conspiracy among suppliers to fix prices or rig bids.

Third, DOJ's evidence shows that Pilgrim's made independent business decisions about what products it wanted to sell and to whom. It chose to raise prices to KFC expecting to lose volume, and it did. As is consistent with competition, and not price fixing, some of Pilgrim's competitors pursued different strategies and sought to maximize their sales to KFC. From 2012 to 2018, Pilgrim's lost approximately 58% of its KFC 8-piece volume.  *See* DXs. F-790, D-341. Case Farms and Tyson, Pilgrim's competitors, took much of that reallocated volume.  *See* DXs. F-747, G-474. As Mr. Ledford testified, Pilgrim's made independent decisions about its mix of products and its customer priorities.  *See* Ledford, Nov. 8, 2021, (TR. 69:13-72:02).  Those business decisions resulted in a decline in Pilgrim's sales to KFC of 8-piece COB from 3.2 million pounds per week to 1.34 million pounds per week. *See* DXs. F-790, D-341. In contrast, for example, Claxton, a competitor of Pilgrim's, made a business decision to keep its volume

---

742, F-743, F-750, GX 1053, GX 1728, F-759, GX 1515, GX 1120, F-768, F-769, GX 1120, F-768, F-769, GX 1122, F-777, F-778, GX 1124, F-786, F-787, F-788, F-790, GX 1552, GX 1729, F-798, F-799, H-971.

6

relatively steady during that period and its pricing – in the middle of the range of competitors' pricing that year – reflected that strategy. *See* DXs. F-750, F-756.

Finally, RSCS's uncontroverted internal analysis reflects each supplier's different bidding and product mix strategies. For example, in 2013, Claxton kept its bid price for 8-piece fried chicken relatively steady before coming down on its final pricing, and Claxton limited its bid to select products. *See* DX. F-808 at 15-26. MarJac submitted the highest first round bid followed by Tyson and then Pilgrim's, but Pilgrim's moved less than other two companies and ended with a higher price. *See* DX. F-808 at 16. Pilgrim's also chose to bid and supply nearly every product in the KFC mix while MarJac did not. *See* DX. F-808 at 15-26. The bids and contracts themselves show independent business decisions based on different business strategies and the absence of any price-fixing agreement.

Again, it is not Mr. Austin's burden to affirmatively prove that the charged conspiracy did not exist. But that is in fact the only reasonable conclusion from the evidence DOJ presented. The evidence that Mr. Austin committed the charged crime "is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Fuller*, 751 F.3d at 1153.

## CONCLUSION

All of this presents the question: who agreed with whom to do what? Because DOJ has failed to provide evidence sufficient to answer this threshold question, this case should be dismissed.

Dated: November 29, 2021

Respectfully submitted,

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

**CERTIFICATE OF SERVICE**

       I hereby certify that on November 29, 2021, I electronically filed the foregoing motion with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have entered notices of appearance in this matter.

s/ *Michael S. Feldberg*

Michael S. Feldberg