IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY R. MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.    RICKIE PATTERSON BLAKE,

    Defendants.

## DEFENDANT WILLIAM LOVETTE'S MOTION *IN LIMINE* TO EXCLUDE ALL EVIDENCE REGARDING SYSCO PAYMENT TERMS

Defendant William Lovette, by and through undersigned counsel, respectfully moves *in limine* for an order excluding any evidence, testimony, or argument regarding Sysco payment terms.

### INTRODUCTION

From the outset the allegation of the Superseding Indictment found in paragraphs 127 and 128—"Distributor-1's Line-of-Credit Term"—has been an outlier and unlike the other episodes charged. The allegation does not relate to alleged price-fixing or bid-rigging for broiler chicken, and it is the only allegation to mention lines of credit. *See* Ind. ¶¶ 127–28. The government's

1

evidence at the first trial had no connection, argued or proven, to the charged conspiracy, which this Court rightly defined as only price-fixing and bid-rigging conduct. Even if there were some theoretical probative value to this surplusage—which there is not—any minimal relevance is substantially outweighed by the risk of confusion of the issues and the misleading of the jury. The government has made clear through its witness and exhibit lists that it will rely upon the same tactic on re-trial. The Court should not allow the government to play the same tactical gamesmanship when there is no logical nexus between the Sysco credit terms and the charged conspiracy.[1]

## LEGAL STANDARD

Irrelevant evidence is not admissible at trial. *See* FRE 402. The Court may also exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury. . . ." Fed. R. Evid. 403. The Court has broad discretion on admissibility and "has not only the discretion but also the duty to exclude evidence of little or no relevance or probative value which might have a prejudicial effect." *Sec. State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir. 1971).

The Court is better situated now to decide this issue when all of the evidence has already been previewed for the Court during a previous trial. *See United States v. Wittig*, 425 F. Supp. 2d 1196, 1205 (D. Kan. 2006) ("But in this case, this Court heard over two months of evidence during the first trial, which gave it a frame of reference beyond that available to a court ruling on limine

---

[1] The government raised its evidence on this allegation in opposition to Mr. Lovette's Motion for Judgment of Acquittal. ECF No. 900 at 19. The Court, however, made no mention of this evidence in denying Mr. Lovette's motion. ECF No. 932 at 14–15.

motions in anticipation of evidence."), *rev'd sub nom. on different grounds*, *United States v. Lake*, 472 F.3d 1247 (10th Cir. 2007).

## ARGUMENT

**I. Sysco's Time of Payment Terms Are Unrelated and Irrelevant to the Charged Price-Fixing and Bid-Rigging Conspiracy.**

The first trial left no doubt that the object of the alleged conspiracy was "price fixing and bid rigging for broiler chicken products." (ECF No. 921 at Instruction No. 20.) Time of payment terms related to Sysco, which are not alleged to have been the subject of a price-fixing or bid-rigging in the price of broiler chicken, are neither. A conspiracy to fix prices, as defined by this Court, is "an agreement or mutual understanding between two or more competitors to fix, control, raise, lower, maintain, or stabilize *the prices* charged, or to be charged, for goods or services." (ECF No. 921 at Instruction No. 18 (emphasis added).) A conspiracy to fix bids is "an agreement between two or more competitors to eliminate, reduce, or interfere with competition for something *that is to be awarded on the basis of bids*." (*Id.* (emphasis added).) Under these definitions, Sysco payment terms cannot, as a matter of law, be the object of the charged conspiracy. The government's evidence also proves as much.

The sole witness offered in support of the government's episode—Melissa Hoyt of Sysco—confirmed that Sysco time of payment terms are distinct from prices; they relate only to the time Sysco had to pay its supplier after receiving a product. (11.17.2021 Trial Tr. 3381: 2–10, 3381:23–3382:1, 3382:12–14.) They are not "prices" that can be fixed. Ms. Hoyt also testified that these payment terms were not tied to any specific RFP or bid, a prerequisite for "bid rigging," and instead applied to all of Sysco's thousands of suppliers across a vast scope of industries. (*See*

3

11.17.2021 Trial Tr. 3410: 1–9; 11.22.2021 Tr. at 110:9–14 (Hoyt).)[2]

Because Sysco's payment terms are independent from the alleged conspiracy to fix prices or rig bids, the government cannot use such evidence to prove the charged conspiracy to fix prices or rig bids.

## II. GX803 Is Irrelevant to the Charged Conspiracy and Should Be Excluded.

The allegation about Sysco's payment terms stems from Sysco's efforts in April 2016 to standardize its payment terms with its thousands of suppliers, which ranged from cups and spoons to butter and food products. (*See* 11.17.2021 Trial Tr. at 3410:1–3411:2; 11.22.201 Tr. at 110:15–18 (Hoyt).) At trial, the government sought to introduce through Ms. Hoyt evidence illustrating Sysco's rollout of the program.[3] The government's only evidence of alleged misconduct was a brief email exchange between Mr. Lovette and Joseph Grendys, the CEO of Koch Foods (GX803), which was introduced without a sponsoring witness and without any context. The government offered no evidence to connect this one-off email exchange, which had no follow-up by anyone, to the alleged conspiracy.

GX803 is irrelevant to the charged conspiracy for several reasons. First, it is clear that Messrs. Lovette and Grendys are discussing "that Sysco is going to 65 days *terms* with their suppliers." (*Id.* (emphasis added).) The communication has nothing to do with prices or bids.

---

[2] Mr. Lovette has included citations to the unofficial, draft transcripts ("Tr.") for testimony on November 22, 2021 only for the convenience of the Court. Mr. Lovette defers to the Court to the extent its recollection differs from what is included in the draft transcript.

[3] The government designated seventy-two exhibits to be introduced through Ms. Hoyt but only seven were proffered and admitted. (GX 803, GX 843–44, GX 854–55, GX 9700–01.)

4

Second, Messrs. Lovette and Grendys were discussing a rumor.[4] Ms. Hoyt conceded in her testimony that Sysco had never even presented Pilgrim's Pride or Koch Foods with the net 65-day terms mentioned in the email. (GX 843–44, GX854–55; 11.17.2021 Trial Tr. at 3418:1–17 (Hoyt); 11.22.2021 Tr. at 124:14–125:8, 128:22–25 (Hoyt).) While Sysco initially planned to offer 65-day terms, it ultimately offered 14-day terms to poultry suppliers like Pilgrim's Pride and Koch Foods. (11.17.2021 Trial Tr. 3386: 8–11 (Hoyt).) Indeed, both Pilgrim's Pride and Koch Foods had already received from Sysco proposed 14-day terms *before* the communication in GX803. (GX843–44, GX 854–55.) Finally, there is no evidence tying this single 2016 communication about payment terms to the nine-year charged conspiracy to rig bids or fix prices. Pilgrim's Pride and Koch Foods went on to negotiate different deal terms under different timelines. Sysco agreed with Pilgrim's Pride to a 14-day term with a unique cash discount on July 6, 2016. (GX9700; 11.17.2021 Trial Tr. 3391:11–13 (Hoyt); 11.22.2021 Tr. 117:5–20 (Hoyt).) Koch Foods, by contrast, was not offered a cash discount and did not agree to new payment terms until four years later, in 2020. (11.17.2021 Trial Tr. 3391:3–7, 3399:12–13 (Hoyt); 11.22.2021 Tr. at 125:24–126:1 (Hoyt).) The government offered no evidence either Mr. Lovette or Mr. Grendys played any role in their respective companies' very different negotiations with Sysco. The Sysco payment terms allegation remains an outlier as there is no modus operandi commonality with any other aspect of the charged conspiracy. *United States v. Navarro*, No. 07-249, 2008 U.S. Dist. LEXIS 117573, at *2 (D.P.R. Sept. 3, 2008) (single conspiracy where there exists "the common purpose,

---

[4] Sysco recognized the rumor mill would generate discussion of the net 65-day terms that Sysco sought to impose on certain suppliers and, in response, Sysco provided internal training to prepare for pushback on its new campaign. (11.17.2021 Trial Tr. at 3421:15–3422:17 (Hoyt).)

5

the interdependency, similar *modus operandi*, and the extent to which participants overlapped during the life of the alleged conspiracy.").

### III. Evidence of Time of Payment Terms Related to Sysco Should Be Excluded Because It Will Prejudice Mr. Lovette, Confuse the Issues, and Mislead the Jury.

In addition to being irrelevant, this evidence will prejudice Mr. Lovette, unnecessarily mislead the jury, and confuse the issues. Fed. R. Evid. 403. At issue is whether the government can prove beyond a reasonable doubt that Mr. Lovette and the other Defendants agreed to fix prices or rig bids. This is the only question the jury must decide. (*See* ECF No. 921 at Instruction Nos. 18, 20.) Evidence of time of payment terms with a company as to which there is no price-fixing or bid-rigging allegation, like GX803, distracts from what is already a daunting, incredibly complex task for the jury because such payment terms are not prices or bids and Sysco is simply not a true subject of the Superseding Indictment. Exposing the jury to this evidence at length runs the unnecessary risk that jurors will wrongly conflate these separate and distinct topics when one of them is not germane to the charged conduct. *Cf. U.S. Football v. Nat'l Football League*, 634 F. Supp. 1155, 1181 (S.D.N.Y. 1986) (recognizing that consideration of "witnesses and documents largely unrelated to this action as a whole" will "unnecessarily confuse the issues in this case and mislead the jury").

As a discussion about timing of payment to a distinct party not connected to the broiler chicken market, GX830 offers no probative value to show that Mr. Lovette acted in furtherance of an alleged conspiracy to fix prices or rig bids of broiler chicken. Allowing the jury to consider a communication in which Mr. Lovette speaks directly with a competitor about an unrelated topic with no nexus to the charged conspiracy is unfairly prejudicial.

6

**IV. The Government's Approach for the Re-Trial Is Unchanged.**

The government plans to offer substantially the same evidence regarding Sysco's line-of-credit terms in the re-trial as it did in the first trial. (*See* ECF Nos. 935, 936.) As in the first trial, Ms. Hoyt is the only fact witness the government intends to call on the subject. (ECF No. 936.) While the government's exhibit list for re-trial includes 167 new exhibits, none have been designated for Ms. Hoyt. Indeed, the government intends to offer fewer exhibits through Ms. Hoyt than it did in the first trial. (ECF Nos. 593, 669, 753, 779, 908.)

While the Court may not have been situated to exclude all evidence relating to Sysco's time of payment terms before the first trial, the Court has now seen the government's case. *See Wittig*, 425 F. Supp. 2d at 1205 ("But in this case, this Court heard over two months of evidence during the first trial, which gave it a frame of reference beyond that available to a court ruling on limine motions in anticipation of evidence."). Given the evidence presented in the first trial and its lack of connection to the charged conduct, as well as the government's intent to rely upon the same tactic again, the Court is now in a position to exclude this evidence, including GX803, because it is irrelevant and threatens to confuse the issues, mislead the jury, and prejudice Mr. Lovette.

## CONCLUSION

For all of these reasons, Mr. Lovette respectfully requests that the Court exclude any testimony, evidence, or argument relating to Sysco payment terms.

Dated: February 3, 2022                                     Respectfully submitted,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
James P. McLoughlin, Jr.
Frank E. Schall

7

Kaitlin M. Price  
Catherine R. Prater  
MOORE & VAN ALLEN PLLC  
Attorneys for William Wade Lovette  
100 North Tryon Street, Suite 4700  
Charlotte, NC 28202  
(704) 331-3622  
johnfagg@mvalaw.com  
jimmcloughlin@mvalaw.com  
frankschall@mvalaw.com  
kaitlinprice@mvalaw.com  
catherineprater@mvalaw.com  

Case No. 1:20-cr-00152-PAB Document 964 Filed 02/03/22 USDC Colorado Page 8 of 9

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

                 *s/ John A. Fagg, Jr.*