IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. WILLIAM WADE LOVETTE,

    Defendants.

## UNITED STATES' MOTION TO SUPPLEMENT *JAMES* LOG

The government respectfully moves to supplement its *James* Log with the additional entries appearing in the attached Exhibit A. The entries comprise four categories of statements: (1) testimony admitted as coconspirator statements at prior trials; (2) a defense exhibit admitted at the first trial under Rule 801(d)(2)(E); (3) an email thread and accompanying attachment that the government submitted as part of its initial *James* Log (Entry 245), but which has never been ruled on; and (4) invoices that coconspirator Pilgrim's Pride Corporation issued for the sale of Kentucky Fried Chicken products (among other products) sold under the contract reached as a result of the charged conspiracy. The Court has already admitted the first two categories of statements as coconspirator statements, because the statements were identified on a

prior *James* Log entry derived either from testimony elicited at the first trial or from an interview with the government. The government submits these statements for a pre-trial ruling to streamline trial—specifically, to remove any doubt that the statements described during the second trial will be admitted in the upcoming trial.

## BACKGROUND

The Court has already determined, after conducting a *James* hearing (ECF 559) the two fundamental predicates for ruling each of the statements appearing in Exhibit A are admissible under Rule 801(d)(2)(E): (1) the charged conspiracy existed, and (2) 12 then-current Pilgrim's Pride employees were members of the conspiracy. The Court confirmed the conspiracy's existence, and the original ten defendants' knowing participation in that conspiracy, in its Order denying defendants' Rule 29 motions after the first trial (ECF 932).

The rulings required to adjudicate the government's supplemental *James* Log entries will require minimal judicial resources. With the exception of *James* Log entry 245, which was part of the government's initial *James* Log but the Court has never ruled on at the government's request, and entries 140-S through 146-S, all other entries on Exhibit A contain statements that the Court has previously admitted into evidence as coconspirator statements. The Court's rulings on the entries in Exhibit A, including confirmation of its prior rulings, will streamline the admission into evidence of those statements.

## DISCUSSION

The government addresses each of the four categories of statements on its Third *James* Log[1] (47 total entries) in turn.[2]

### I. Testimony From Prior Trials Is Admissible.

The Court already admitted the first category of statements on the Third *James* Log during the prior trials.[3] (*See* Third Log at 102-S–106-S (Suerken's testimony), 107-S–129-S (Bryant's testimony), 130-S–139-S (Pepper's testimony).)[4] The statements were previously admitted by the Court, in large part without objection, and should be admitted at the third trial, pursuant to the Court's prior rulings. ECF 1263 at 2 ("The Court will not reconsider its earlier rulings, absent a change in circumstances warranting reconsideration."). Defendants' few objections were either overruled or withdrawn, and there are no changed circumstances that would warrant reconsideration of any of the Court's rulings.

---

[1] In the Third Log, the government's "Bases of 801(d)(2)(E) admissibility" column uses the same letter coding as it used in the initial Log and second Log. A key for the letter coding appears at ECF 358-5.

[2] To prepare for trial, the government is interviewing witnesses and analyzing prior trial testimony. During this preparation, the government may identify additional coconspirator statements, including statements learned from witnesses that have not testified in prior trials. If the government identifies any such additional statements, it may seek leave to supplement this submission or otherwise seek a ruling of admissibility under Rule 801(d)(2)(E).

[3] The government has previously identified some of the statements appearing in the attached supplemental *James* Log; the government is nonetheless including them here in an abundance of caution.

[4] The Third Log pincites each statement to a copy of the rough trial transcript since certified copies have not been prepared.

3

The only entry meriting specific discussion is Entry 107-S: Bryant's testimony from the first trial regarding certain statements by his coconspirator Jason McGuire, Bryant's then-manager. The government highlights this particular entry given the inconsistent treatment of these statements in previous trials. (*See* 11/2/2021 C. Tr. 975:18–976:1; 3/8/2022 R. Tr. 220:14-223:6.)

Entry 107-S was elicited from Bryant during cross-examination. Bryant testified that McGuire told Bryant that Austin believed that Pilgrim's would convert a "small bird" chicken plant in Natchitoches, Louisiana "from small bird to big bird unless Pilgrim's could achieve a significant price increase for small bird." (11/2/2021 C. Tr. at 975:14–17; *see also id.* at 976:13–976:20.) But Bryant testified that Pilgrim's did not actually intend to convert the plant; instead, McGuire told Bryant that the threatened conversion was merely a ruse that would pressure Austin to raise prices. (*Id.* at 975:18–976:1.)

Contemporaneous with this testimony, the Court also permitted defendants to introduce Exhibit D-925 under Rule 801(d)(2)(E), an email thread between McGuire and Bryant (with forwarded messages from Defendant Bill Lovette, Austin, former defendant Jimmie Little, Chad Baker, and Fabio Sandri) about the same "idea of converting the plant in Louisiana." *Id.* at 977:7–20. Defendants then used the email to question Bryant about the plant. In response, Bryant again testified that McGuire told him that the Louisiana plant conversion "was not a real scenario . . . it was meant to apply pressure to Roger to get the price increases." (*Id.* at 978:8–10.)

While defendants should not have been permitted to rely on Rule 801(d)(2)(E) for the admissibility of this evidence, the statements are nonetheless coconspirator

4

statements. Now that the Court has ruled as such, the government should be permitted to introduce them during the third trial. The statements (1) revealed the existence of a conspiracy to increase prices; (2) identified McGuire and Lovette's roles in pressuring Austin to deliver those increases; and (3) implicitly warned Bryant not to alert Austin of the ruse, and, therefore, were made in furtherance of the conspiracy. Indeed, Bryant testified that the statements McGuire made in his call with Bryant regarding the plant conversion ruse form part of the basis for his knowledge that there was an agreement between Pilgrim's employees and its competitors to reduce price competition in order to increase price and mitigate price decreases. (*See* 3/8/2022 R. Tr. 226:17-228:5 (referencing call with McGuire in connection with Exhibit D-925.))

## II. Exhibit D-925 Is Admissible.

The second category of statements for which the government seeks a ruling is Exhibit D-925, which the Court already found admissible under Rule 801(d)(2)(E) in the first trial. That exhibit was admitted in its entirety during the testimony described above in Section I. (11/2/2021 C. Tr. at 976:24–20.)

For the same reasons set forth in Section I above, the government should be permitted to offer Exhibit D-925 as a coconspirator statement during the third trial. (ECF 1263 at 2–3 (maintaining and preserving for appeal the Court's "earlier rulings, absent a change in circumstances warranting reconsideration.").)

## III. Entry 245 from the Government's First *James* Log Is Admissible.

*James* Log entry 245 consists of two documents that appeared on the government's initial *James* Log, an email chain and its attachment, for which the

5

government has not yet sought a ruling by the Court. (First *James* Log at 245, ECF 358-2 at 48 (PILGRIMS-DOJ-0001384965–4966) (GX-1890, 1891); ECF 380-3 (previously withdrawing same).) Exhibit 1890 is a February 3, 2017 email conversation between Stiller and Bryant about Pilgrims' KFC cost models. Exhibit 1891 is the attached cost model itself. The government seeks to admit both exhibits under Rule 801(d)(2)(E).

Both the email and the attached cost model were made "during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Bryant and Stiller made the statements in February 2017, in the midst of the bid-rigging conspiracy for Kentucky Fried Chicken's (KFC's) upcoming contract. (*See, e.g.*, GX-61 (summary exhibit for KFC 2017 scheme).)

The proffered statements were also made in furtherance of the conspiracy. Courts "construe[] the term 'in furtherance of' in a [] broad manner." *United States v. Barajas-Chavez*, 162 F.3d 1285, 1288 (10th Cir. 1999) (en banc) (citing, *e.g.*, *United States v. Sinclair*, 109 F.3d 1527, 1534–35 (10th Cir. 1997)); *accord, e.g., United States v. Bazemore*, 41 F.3d 1431, 1434 (11th Cir. 1994). Statements need not "*actually* further the conspiracy to be admissible." *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986) (emphasis in original). Under this standard, Exhibits 1890 and 1891 are easily admissible. Exhibit 1890 contains statements by two coconspirators scheduling a meeting to discuss a bid to be submitted to KFC as part of the conspiracy. These statements "inform[ed] [coconspirators] of the current status of the conspiracy," and such statements are regularly admitted as coconspirator statements. *United States v. Ammar*, 714 F.2d 238, 252 (3d Cir. 1983).

Exhibit 1891 is also admissible as a coconspirator statement. The spreadsheet details alternative profit margins for the colluding chicken suppliers. The Current Model Supplier Margin line item shows the increased margin that would result from charging KFC higher prices as a result of the price-fixing conspiracy. This statement furthers the conspiracy by communicating the conspiracy's financial payoffs and by helping coconspirators plan future price fixing. *United States v. Ortiz-Martinez*, 1 F.3d 662, 674 (8th Cir. 1993) (holding that statements "describ[ing] the source of the money" in a criminal conspiracy "were in furtherance of the conspiracy"). Accordingly, the Cost Model's Supplier Margin row of Exhibit 1891 is also admissible under Rule 801(d)(2)(E).

## IV. Entries 140-S through 146-S Are Admissible.

Entries 140-S through 146-S (attached as Exhibit B) are Pilgrim's Pride invoices dated late 2015 and early 2016. The invoices relate to Pilgrim's sale of chicken products, including the sale KFC products. At the time of these invoices, Pilgrim's sales of KFC products were governed by the contract between Pilgrim's and KFC purchasing cooperative, Restaurant Supply Chain Solutions (RSCS), for the period January 1, 2015 through December 31, 2017. GX-1126. As the Court ruled in connection with the *James* hearing, this contract, which Defendant Austin signed on behalf of Pilgrim's on October 31, 2014, embodies statements made during the course and in furtherance of the conspiracy. *See* ECF 358.2 at 31 (*James* Log Entry 165 identifying Pilgrim's-RSCS Contract for 2015–2017 signed by Roger Austin); ECF 559 at 34 (Log Entry 165 is admissible under Rule 801(d)(2)(E)).

The invoices clearly qualify as coconspirator statements in several ways. To start, the invoices' underlying contract was of course conspiratorial. It was through this contract with RSCS that Pilgrim's, in concert with its competitors, reduced competition for the price of chicken products to be sold to KFC restaurants. The reduction in competition resulted in contract prices that were higher than those that would likely have been charged had Defendant Austin and his coconspirators not conspired. *See United States v. Shyres*, 898 F.2d 647, 657 (8th Cir. 1990) (admitting summary of inflated invoices under Rule 801(d)(2)(E)).

In addition, Pilgrim's itself is a conspirator, like the other employers of individual conspirators.[5] The testimony of Bryant alone establishes this. As the Court found in denying the defendants' Rule 29 motions: "The testimony of government witness Robbie Bryant, a Pilgrim's Pride employee, is sufficient to support a finding beyond a reasonable doubt that conspiracy existed between Pilgrim's, Koch Foods, Claxton Poultry, Tyson Foods, Mar-Jac Poultry, and George's Inc. to rig bids and fix prices." ECF 932 at 6 (parentheticals omitted). The conspiracy, as Bryant described and the Court found, extended to the bidding in the 2014 RSCS negotiations. *Id.* at 7.

Pilgrim's has also admitted to its participation in the conspiracy. Pilgrim's pled guilty to a one-count information charging it with the same conspiracy that the *Penn*

---

[5] Companies can be coconspirators for purposes of Rule 801(d)(2)(E), including in Sherman Act conspiracies. See In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig., 906 F.2d 432, 458 (9th Cir. 1990) (holding that companies were co-conspirators under Rule 801(d)(2)(E)); United States v. Portsmouth Paving Corp., 694 F.2d 312, 320 (4th Cir. 1982) (finding no error admitting coconspirator statements against Portsmouth Paving).

defendants are charged with. *See United States v. Pilgrim's Pride Corporation*, 1:20-cr-00330 (D. Colo.) at ECF 1. As part of pleading guilty, Pilgrim's stated that its participation in the conspiracy affected the sales of broiler chicken products to KFC, including for the contract period 2015 through 2017. *See id.* at ECF 58 at 4. The invoices identified as Supplemental *James* Log Entries 140-S through 146-S reflect Pilgrim's performance under this conspiratorial contract. Pilgrim's, which is the declarant of the invoices, sold KFC chicken products that were the result of the conspiracy. Invoicing of course is the act of requesting payment for goods sold and under this Circuit's controlling precedent, the request and receipt of payment resulting from anticompetitive conduct such as bid rigging and price fixing, are within the scope of a Sherman Act conspiracy. *See United States v. Kemp & Associates, Inc.*, 907 F.3d 1264, 1271 (10th Cir. 2018) ("[W]e adopted the Eighth Circuit's holding that a Sherman Act violation is accomplished both by the submission of noncompetitive bids, and by the request for and receipt of payments at anti-competitive levels." (internal citations and quotation marks omitted)). The preparation and submission of these invoices are thus statements made by a conspirator during the course of the conspiracy and in

9

furtherance of the conspiracy's objective to obtain payments from the conspiracy's anti-competitive conduct.[6]

## CONCLUSION

The government respectfully requests that the Court admit the coconspirator statements in the Third *James* Log, which is attached as Exhibit A.[7] In addition, the government respectfully requests the Court to set a deadline of May 9 for Defendants' objections, if any, to this motion and the entries in the Third *James* Log.

Dated: April 25, 2022        Respectfully submitted,

/s/ Kevin B. Hart
KEVIN B. HART
LESLIE A. WULFF
PAUL TORZILLI
DANIEL LOVELAND, JR.
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 598-8242
Email: kevin.hart@usdoj.gov
*Attorneys for the United States*

---

[6] The invoices are similarly admissible as records of Pilgrim's regularly conducted activity, *see* Fed. R. Evid. 803(6).

[7] In the event that the Court rules any statements (or any part thereof) appearing in Exhibit A do not satisfy the requirements of Rule 801(d)(2)(E), the government may nevertheless seek to establish admissibility at trial under an alternate basis.

10